UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY BRUNSON,

                                        Plaintiff,


v.                                                                          3:26-cv-0133
                                                                            (AMN/CBF)


COREY KNIGHT,

                                        Defendant.

_____

APPEARANCES:

ANTHONY BRUNSON
*Plaintiff, pro se*
25-B-1063
Adirondack Correctional Facility
Box 110
Ray Brook, NY 12977

**CARLA B. FREEDMAN**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint, Dkt. No. 1, along with an

amended complaint, Dkt. No. 8, submitted by *pro se* plaintiff Anthony Brunson ("Plaintiff")

asserting claims pursuant to 42 U.S.C. § 1983.[1]  Plaintiff, who was in the custody of New York

State Department of Corrections and Community Supervision ("DOCCS") at Franklin

Correctional Facility at the time of filing, *see* Dkt. No. 1 at 2; Dkt. No. 8 at 2, has not paid the

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 2, 3, 9, 10.

## II.     IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 9. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 10, he is granted permission to proceed IFP.[2]

## III.    BACKGROUND

Plaintiff filed a complaint, along with an application to proceed IFP, on January 27, 2026. *See generally*, Dkt. Nos. 1, 2, 3.  On February 2, 2026, the action was administratively closed due to Plaintiff's failure to properly commence it.  Dkt. No. 6.  On March 16, 2026, Plaintiff filed an amended complaint, amended motion for leave to proceed IFP, and amended inmate authorization form.  *See generally*, Dkt. Nos. 8, 9, 10.  Accordingly, the Hon. Anne M. Nardacci, United States District Judge, directed the Clerk to reopen the action and restore it to the Court's

---

[2] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

active docket.  Dkt. No. 12.  The matter was reassigned to the undersigned by Text Order dated March 17, 2026.  Dkt. No. 13.

Plaintiff's amended complaint lists one Defendant, State Trooper Corey Knight.  Dkt. No. 8 at 2.  Plaintiff alleges on July 18, 2023, at the intersection of Murray Street and Clinton Street in Binghamton, New York, he saw the flashing lights of a State Trooper's vehicle behind his own vehicle from across the street.  *Id*. at 5.  Defendant Knight yelled to Plaintiff "do you know why I pulling you over," then approached Plaintiff and said "you don't have a front license plate and your tinted windows are to dark," and Plaintiff responded "my front plate is displayed in my front windshield."  *Id*.

Defendant Knight asked Plaintiff for his driver's license and returned to the patrol vehicle after Plaintiff provided it to him.  *Id*. at 5-6.  Knight exited his vehicle, placed Plaintiff in handcuffs, and said "I have a warrant" but stated to Plaintiff "you are NOT under arrest you are being detained."  *Id*. at 6.  Knight subsequently returned to his vehicle and additional "plain clothes cops showed up" and spoke with both Knight and Plaintiff.  *Id*.  Knight stated "the warrant was nonextraditable" but did not remove the handcuffs from Plaintiff.  *Id*.

Plaintiff asked, "why [a]m I still cuff I'm not under arrest I have not committed a crime and this a traffic stop and my vehicle is legally parked I don't understand what is going on here."  *Id*. at 7.  Knight spoke with one of the plain clothes officers in his vehicle then the two approached Plaintiff and Knight informed Plaintiff he was "going to do a inventory to search."  *Id*.  Plaintiff responded, "no you are not because I have not commetted no crime this is a traffic stop" and one of the officers tried to open Plaintiff's vehicle but the car was locked.  *Id*. at 8.

One of the officers asked Plaintiff to open the car, Plaintiff said no, and another officer took keys for the vehicle from Plaintiff's belt loop and unlocked the vehicle.  *Id*.  Defendant

Knight and other officers searched the vehicle for approximately ten minutes and "pull[ed] out a gun from the car." *Id*.  Plaintiff was subsequently placed in a vehicle and Defendant Knight drove Plaintiff "to the troop[er] station and charge[d]" him.  *Id*.  Plaintiff was later transported to the Broome County Jail, his face was "posted all over the news and because of this the private complex that [Plaintiff] was moving into the day of the arrest didn't allowe [him] to move in." *Id*. at 9.

Plaintiff "was arrested for the following charges: CPW Degree 2 [in violation of] Pl 265.03, C.P.W. Pl 265.01-B, Motor Vehicle license violation VTL 0509, Equip Violation VTL 0375, No license Plate VTL 0402." *Id*. at 4.  He subsequently posted bail and "had to wear ankle bracelet," "was not allow[ed] to w[or]k or do anything," and "had to report to probation pretr[ia]l release until the case was done." *Id*. at 9.  The Court takes judicial notice of DOCCS public administrative records stating Plaintiff is incarcerated on a conviction for Criminal Possession of a Weapon in the Second Degree.  *See* https://nysdoccslookup.doccs.ny.gov/ for Brunson, Anthony, R., DIN 25B1063 (site last visited on April 16, 2026).[3]

Plaintiff's amended complaint contains three claims: (1) "violated the fourth Amendment unlawful shearch and sezir expsessive force, unlawful dentention and arrest;" (2) "unlawful dentention and arrest without propable cause, expsessive force, unlawful shearch + sezir, stop invalid, fourth Amendment;" and (3) "stop invalid, fourth Amendment, expsessive force, unlawful, shearch + sezir, unlawful dentention and arrest, unlawful imprisonment, with out

---

[3] *See also*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . ."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

propable cause." Dkt. No. 8 at 10. Concerning relief, Plaintiff requests "monetary damages loss wages loss [of] personal property monetary compensation." *Id*.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at \*2 (N.D.N.Y. Nov. 21, 2024), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short

and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    DISCUSSION

Upon review, Plaintiff's amended complaint fails to comply with the Federal Rules of Civil Procedure and his claims may be barred; therefore, the undersigned recommends the pleading be dismissed in its entirety.

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024).  A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

First, Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).  "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole*, 2024 WL 4870495, at *2 (quoting Fed. R. Civ. P. 8(d)).  Therefore, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Rule 10(b) of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). This rule serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

Here, Plaintiff's amended complaint fails to comply with the Federal Rules' pleading requirements, as it lacks both a short and plain statement showing Plaintiff is entitled to relief as well as numbered paragraphs, limited as far as practicable to a single set of circumstances. His purported claims are replete with legal conclusions, disconnected from his rambling factual allegations. Accordingly, dismissal of the pleading is warranted. *See*, *e.g.*, *Cassell v. Barrett*, No. 1:25-CV-1435 (AJB/TWD), 2025 WL 3440551, at *3 (N.D.N.Y. Dec. 1, 2025), *report and recommendation adopted*, 2026 WL 86741 (N.D.N.Y. Jan. 12, 2026).

Additionally, while Corey Knight is the sole Defendant listed in the amended complaint's caption and list of parties, *see* Dkt. No. 8 at 1-2, in a later portion of the same pleading, Plaintiff states: "I Plaintiff Anthony Brunson bring this action against: Troopre Corey Knight State Troopre of New York State along with other Troopre of Troope C defendants, and the city or Town of Binghamton N.Y. . . . ." Dkt. No. 8 at 4. However, Rule 10(a) of the Federal Rules of Civil Procedure requires that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "A party not named in the caption of the complaint is not a party to the action." *Battle v. Nurse Biorefrence*, No. 9:25-CV-1534 (BKS/PJE), 2026 WL 177788, at *5 (N.D.N.Y. Jan. 22, 2026) (citation omitted). Therefore, to the extent Plaintiff seeks to assert a claim against

8

any individual or entity not identified in the action's caption, any such claim is also subject to dismissal for failure to comply with Rule 10(a).

Moreover, as previously stated, Plaintiff is currently in DOCCS' custody following his conviction for Criminal Possession of a Weapon in the Second Degree.  It is well established that civil lawsuits may not be used to collaterally attack criminal convictions.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Id*.  Accordingly, to the extent Plaintiff's claims could be construed as calling into question the validity of any conviction which has not been reversed, expunged, declared invalid, or called into question by a relevant authority, his claims are barred by *Heck*.  *See*, *e.g.*, *Hines v. Giacona*, No. 5:18-CV-0002 (GTS/TWD), 2018 WL 4610675, at *3 (N.D.N.Y. Apr. 2, 2018) (concluding the plaintiff's § 1983 claims which "would necessarily call into question the validity of his conviction" was barred by *Heck v. Humphrey* "unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated.") (citations omitted), *report and recommendation adopted*, 2018 WL 3046513 (N.D.N.Y. June 20, 2018).

Finally, as explained above, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Here, out of an abundance of

caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed with leave to amend to cure the defects as stated above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff must provide a short and plain statement of the relevant facts supporting his claim against any Defendant named in the amended complaint. Plaintiff must describe how the Defendant's acts or omissions violated his rights, and do so in numbered paragraphs limited as far as practicable to a single set of circumstances. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against each Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 9) is **GRANTED**;[4] and it is further

---

[4] The total cost for filing a civil action in this court is $405.00 (consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $55.00). A party granted IFP status is not required to pay the $55.00 administrative fee; however, a prisoner granted IFP status is required to pay, over time, the full amount of the $350.00 filing fee, regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3). The amount of the payments fluctuates over time depending upon the balance in the inmate's prison account. *See* 28 U.S.C. § 1915(b).

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 8) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: May 5, 2026
      Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]   At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*
Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]     Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

• In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson* [3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

[3]     It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

2010 WL 5185047

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

5 Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1]   The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]   Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

 **\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

3      Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

4      Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5] Plaintiff did not provide any transcripts.

## C. Discussion[6]

[6] As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

2024 WL 4870495

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction.[7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

2024 WL 4870495

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. <u>See</u> <u>Porter v. Nasci</u>, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see</u> <u>also</u> <u>Diamond "D" Constr. Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." <u>Zavalidroga v. Girouard</u>, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing <u>Mireles v. Waco</u>, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " <u>Id.</u> (quoting <u>Huminski v. Corsones</u>, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); <u>see</u> <u>Positano v. New York</u>, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." <u>Zavalidroga</u>, 2017 WL 8777370, at *8 (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " <u>Id.</u> (quoting <u>Mireles</u>, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting <u>Ceparano v. Southampton Just. Ct.</u>, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Ceparano</u>, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " <u>Ceparano</u>, 404 F. App'x at 539 (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " <u>Bliven v. Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009) (quoting <u>Mireles</u>, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." <u>McCray v. Lewis</u>, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. <u>See</u> <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." <u>Benyi v. New York</u>, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]   Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/ Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

2024 WL 4870495

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]  The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have

**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]  If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.   8

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,
County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative
Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

2025 WL 247901

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, \*14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, \*5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, \*5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

---

2024 WL 4910561

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.

Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH), No. 8:24-CV-01036 (GTS/CFH)
|
Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1** Plaintiff pro se Scott Lewis ("plaintiff") [1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2]

[1] The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v.

Case 3:26-cv-00133-AMN-CBF    Document 18    Filed 05/05/26    Page 27 of 87
Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2      Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

**\*2**  "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at \*1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at \*2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at \*1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at \*1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at \*1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at \*1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at \*1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at \*1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

2024 WL 4910561

3      In <u>Lewis I</u>, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. <u>See</u> generally Compl. I. In <u>Lewis II</u>, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. <u>See</u> generally Compl. II.

4      Citations are to the pagination generated by CM/ECF, located in the header of each page.

 **\*3** Accordingly, it is recommended that these two cases be consolidated, with <u>Lewis I</u> as the lead case, and <u>Lewis II</u> as a member case.

### III. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [5] 28 U.S.C. § 1915(e)(2)(B). [6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." <u>Praileau v. Fischer</u>, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5      " 'A case is malicious if it was filed with the intention or desire to harm another.' " <u>Tafari v. Hues</u>, 473 F.3d 440, 442 (2d Cir. 2007) (quoting <u>Andrews v. King</u>, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " <u>Id.</u> (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)).

6      These requirements apply to non-prisoner pro se litigants. <u>See</u> N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

<u>Id.</u> (internal quotation marks, citations, and footnote omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). [7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7      The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

*4  "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [8] Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8      All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

## B. Plaintiff's Complaint

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

Id. at 2, ¶6.

**\*5** Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024." [9], [10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024." [11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

[9]    Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

[10]    Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

[11]    Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated

timely." [12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

[12]    However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

### C. Analysis

**\*6** Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections, [13] alleging violations of his First and Fourteenth Amendment rights. [14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

[13]    "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

[14]    Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at \*5 (N.D. Fla. Aug. 12, 2005).

Case 3:26-cv-00133-AMN-CBF    Document 18    Filed 05/05/26    Page 32 of 87

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

 **\*7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established

that New York has not consented to § 1983 lawsuits in federal court[.]" Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); see Iwachiw, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); see also Dekom v. New York, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), aff'd, 583 F. App'x 15 (2d Cir. 2014) (summary order).

**\*8** Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." Tiraco, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. See Mayo v. Doe, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)); see also Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the Ex Parte Young doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. See Tiraco, 963 F. Supp. 2d at 192; see Ex parte Young, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in Ex Parte Young, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." Santiago, 945 F.2d at 32 (citing Pennhurst State Sch. & Hosp., 465 U.S. at 102); see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the Ex Parte Young exception to apply.") (citations omitted); see also Harris v. N.Y. State Educ. Dep't, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the Ex parte Young exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. See Tiraco, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); cf. Gallagher v. New York State Bd. of Elections, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); Cohen v. Richardson, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing Cecos Int'l, Inc. v. Jorling, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), aff'd, 895 F.2d 66 (2d Cir. 1990)), reconsideration denied, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. See Yang v. Kellner, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), aff'd sub nom. Yang v. Kosinski, 960 F.3d 119 (2d Cir. 2020); see also McMillan, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); Ulanov v. N.Y. State Bd. of Elections, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), reconsideration denied, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

**\*9** "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." Griffith v. New York State, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing Crumble v. United States, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug.

Case 3:26-cv-00133-AMN-CBF    Document 18    Filed 05/05/26    Page 34 of 87

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

7, 2023), and Nguyen v. Kijakazi, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), report and recommendation adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); see Wang v. Delphin-Rittmon, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing Smith v. Scalia, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015)); see Iwachiw, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. See Abadi v. City of New York, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

## IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. See Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), report and recommendation adopted, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); see also Stiegman v. New York State Off. of Info. Tech. Servs., No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the Ex Parte Young exception), report and recommendation adopted, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

[15]    Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

## V. Conclusion

**\*10**  **WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

Case 3:26-cv-00133-AMN-CBF     Document 18     Filed 05/05/26     Page 35 of 87

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [16]

[16]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4910561

---

Case 3:26-cv-00133-AMN-CBF    Document 18    Filed 05/05/26    Page 36 of 87

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4689022

2024 WL 4689022
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

8:24-CV-0849 (GTS/CFH), 8:24-CV-1036 (GTS/CFH)
|
Signed November 6, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, Plaintiff, Pro Se, 1936 Saranac Ave, #3, PMB 411, Lake Placid, NY 12946.

HON. LETITIA A. JAMES, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendant, 300 South State Street, Suite 300, Syracuse, NY 13202.

## <u>DECISION and ORDER</u>

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in each of the two above-captioned civil rights actions filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), is a Report-Recommendation by United States Magistrate Judge Christian F. Hummel recommending that (1) the matters be consolidated, with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036, and (2) Plaintiff's Complaint in each action be *sua sponte* dismissed without prejudice and with leave to amend. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.) In each action, Plaintiff has filed an Objection, and Defendant has filed a Response to that Objection. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 28; Action No. 8:24-CV-1036, Dkt. Nos. 30, 31.) For the reasons set forth below, each Report-Recommendation is accepted and adopted in its entirety, the matters are consolidated (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036), and Plaintiff's Complaint in each action shall be dismissed unless Plaintiff files an Amended Complaint within thirty days of the entry of this Decision and Order.

As an initial matter, the Court finds that (1) because neither of Plaintiff's Objections challenges Magistrate Judge Hummel's recommendation regarding consolidation, that recommendation need be (and is) reviewed only for clear error,[1] and (2) that recommendation survives that clear-error review for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 25; Action No. 8:24-CV-1036, Dkt. Nos. 30, 28.)

---

1    When no specific objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific

2024 WL 4689022

objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C); *see, e.g., Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

 **\*2**  Turning to Magistrate Judge Hummel's recommendation regarding the dismissal of Plaintiff's Complaint without prejudice and with leave to amend, the Court begins by finding that, even when viewed with the utmost of special leniency, neither of Plaintiff's Objections contains a specific challenge to either Report-Recommendation other than a specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity. (Action No. 8:24-CV-0849, Dkt. No. 27; Action No. 8:24-CV-1036, Dkt. No. 30.) As a result, the remaining portions of each Report-Recommendation need be (and are) reviewed only for clear error, which the Court finds they survive for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.)

Finally, with regard to Plaintiff's specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity, the Court must review each such recommendation *de novo.*[2] After doing so, the Court finds that each recommendation survives that *de novo* review for the reasons stated in each of Defendant's Responses: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Action No. 8:24-CV-0849, Dkt. No. 28; Action No. 8:24-CV-1036, Dkt. No. 31.) As a result, the challenged portion of each Report-Recommendation is also accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

[2]     When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

To those reasons, the Court adds only that, as argued by Defendant in each of its Responses, is well established that Defendant is a state agency for the purposes of the Eleventh Amendment. *See, e.g., McMillan v. New York State Bd. of Elections*, 10-CV-2502, 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) ("The State Board [of Elections] is a state agency for the purposes of the Eleventh Amendment."), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order); *Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) ("[T]he Eleventh Amendment bars the Section 1983 action against the State Board of Elections."), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("The State Board of Elections is a state agency for the purposes of the Eleventh Amendment ....") (internal quotation marks omitted); *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity."); *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) ("[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment ....").

**ACCORDINGLY**, it is

**ORDERED** that each Report-Recommendation in the two above-captioned actions (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the two above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a) (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036); and it is further

2024 WL 4689022

**ORDERED** that Plaintiff's Complaint in each action (Action No. 8:24-CV-0849, Dkt. No. 1; Action No. 8:24-CV-1036, Dkt. No. 1) **shall be** <u>**DISMISSED**</u> without further Order of the Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in each Report-Recommendation; and it is further

 **\*3**  **ORDERED** that, should Plaintiff file a timely Amended Complaint, that Amended Complaint shall be, without further Order of this Court, referred to Magistrate Judge Hummel for his review of its pleading sufficiency.

<u>Because the Court certifies that any appeal from this Decision and Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), the Court revokes Plaintiff's *in forma pauperis* status on any appeal from this Decision and Order.</u>

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4689022

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)

|

Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.[1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.[2]

[1]    *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]    *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3]     "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III. SUFFICENCY OF THE COMPLAINT

#### A. Standard of Review

**\*2** Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

2024 WL 1016392

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B. Background**

**\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5]     The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6]     Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

**\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

2024 WL 1016392

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4 th , 5 th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and prociuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

### IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

[7]    To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

Case 3:26-cv-00133-AMN-CBF   Document 18   Filed 05/05/26   Page 44 of 87

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

**\*6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

2024 WL 1016392

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

**\*7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]     As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

**\*8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

2024 WL 1016392

9        In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10       Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

**\*9** "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Case 3:26-cv-00133-AMN-CBF     Document 18     Filed 05/05/26     Page 47 of 87

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
2024 WL 1016392

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]    If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

 **\*10**   Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

Case 3:26-cv-00133-AMN-CBF   Document 18   Filed 05/05/26   Page 48 of 87

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
2024 WL 1016392

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12]   To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11**  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

2024 WL 1016392

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

[13] *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND

**\*12** Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

2024 WL 1016392

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]   Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/ TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]   *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION
 **\*13  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

Case 3:26-cv-00133-AMN-CBF  Document 18  Filed 05/05/26  Page 51 of 87

2024 WL 1016392

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

Case 3:26-cv-00133-AMN-CBF   Document 18   Filed 05/05/26   Page 52 of 87

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

**\*1** On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

2024 WL 1307035

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 3440551
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Chad M. CASSELL, Plaintiff,

v.

Officer BARRETT, et al., Defendants.

1:25-cv-1435 (AJB/TWD)

|

Signed December 1, 2025

**Attorneys and Law Firms**

CHAD M. CASSELL, Plaintiff, pro se, 9978, Washington County Jail, 399 Broadway, Fort Edward, NY 12828.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Chad M. Cassell ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff, who is currently confined at the Washington County Jail, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. Nos. 2, 3.

### II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. *See* Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, *see* Dkt. No. 3, he is granted permission to proceed IFP.[1]

[1]    Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III. COMPLAINT

Plaintiff commenced this action utilizing a form civil rights complaint, identifying 42 U.S.C. § 1983 as the basis for his claims. *See* Dkt. No. 1 at 6.[2] The complaint lists four defendants, State Police Officers Barrett and Bezio, and Washington County Sheriffs Kraeger and Wright. *Id*. at 7-8.

2       Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

With his complaint, Plaintiff submitted a five-page "Story Letter to Explain what has happened in this Cla[i]m ...." *See id*. at 1-5 (emphasis omitted). From what the Court can glean, Plaintiff claims concern incidents which occurred at a residence located in Hudson Falls, New York, in the weeks prior to and on July 22, 2025. *See id*.

Plaintiff's complaint lists the following claims: (1) "ever[y] one of the officers violated my Con[s]t[i]tutional Amendment Right[s] all the way though the whole process. My 14th, 11th, 10th, 8th, 6th, 4th, 1st Amendments Rights;" (2) "I told every officer that she did not live there and had the proof, all they had to do was call the state troops officer we made the agreement with and they would have known that she was l[y]ing on her statements both of them;" (3) "I[']m now forced to do time as an innocent man I lost my house, all my things, I don't know what happ[en]ed to my dog, all my valu[ ]ables & collectables, my truck, everything I've worked the last 25 years for are gone and I might have to do 6 months also on top of all this, my life if a living hell right now;" (4) "unconstitutional conditions of confinement violated my Con[s]t[i]tutional Amendment Rights;" (5) "was guilty and never given the right to prove my innocence;" (6) "failure to protect Violated my Con[s]t[i]tutional Amendment Rights." *Id*. at 10. He seeks $2,000,000 in relief "for each said Defendant in this case." *Id*.

## IV. LEGAL STANDARD

**\*2** Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### V. ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them ...." are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances .... If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense." Fed. R. Civ. P. 10. Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading ...." *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted). A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

 **\*3** Here, Plaintiff's complaint entirely fails to comply with the Federal Rules' pleading requirements, as it lacks both a short and plain statement showing Plaintiff is entitled to relief as well as numbered paragraphs, limited as far as practicable to a single set of circumstances. The Plaintiff's rambling "Story Letter" is replete with legal conclusions, rather than well-pleaded factual allegations. As such, dismissal is warranted.

Moreover, even if Plaintiff's submissions complied with the pleading requirements set forth in Rules 8 and 10, the complaint is entirely devoid of factual allegations against Defendants Barrett and Bezio. *See generally*, Dkt. No. 1. While the pleading contains allegations against "Kraeger," "Wright," and unspecified "Defendants," "Officers," and "Cops," *see id*. at 1-5, because Defendants Barrett and Bezio are identified only in the caption and list of parties, *see id*. at 1, 7-8, the complaint fails to state a claim against those defendants for this additional reason. *See*, *e.g.*, *Bradshaw v. Annucci*, No. 9:23-CV-0602 (MAD/ML), 2023 WL 4744735, at *13 (N.D.N.Y. July 24, 2023) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citing *Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007)) (additional citation omitted); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual allegations that he has not pled."); *Joseph v. Annucci*, No. 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants "named in the caption only" where "[t]he body of the Complaint [did] not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner.").

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the undersigned recommends Plaintiff be afforded leave to amend.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically

identify the legal theory or theories that form the basis for his claim. Plaintiff must provide a short and plain statement of the relevant facts supporting his claim against any Defendant named in the amended complaint. Plaintiff should describe all relevant facts supporting his case, including the date and time, to his best approximation. Plaintiff must describe how the Defendants' acts or omissions violated his rights, and do so in numbered paragraphs limited as far as practicable to a single set of circumstances. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against each Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION
**\*4 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**ORDERED** that the Clerk shall provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization (Dkt. No. 3) and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[3] and it is further

[3]    Prisoners are not exempt from paying the filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

**ORDERED** that the Clerk shall provide a copy of Plaintiff's inmate authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[4]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3440551

**Cassell v. Barrett, Slip Copy (2025)**

2025 WL 3440551

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2026 WL 86741
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Chad M. CASSELL, Plaintiff,

v.

Officer BARRETT et al., Defendants.

1:25-CV-1435 (AJB/TWD)
|
Signed January 12, 2026

**Attorneys and Law Firms**

CHAD M. CASSELL, Plaintiff, Pro Se, 9978, Washington County Jail, 399 Broadway, Fort Edward, NY 12828

### <u>ORDER ON REPORT & RECOMMENDATION</u>

Hon. Anthony J. Brindisi, United States District Judge:

 **\*1**  On October 15, 2025, *pro se* plaintiff Chad M. Cassell ("plaintiff") filed a document entitled a "story letter," which the Court has construed as a civil rights complaint, alleging that defendants violated plaintiff's constitutional rights in connection with state-court proceedings that appear to have led to his confinement in the Washington County Jail. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Applcation"). Dkt. Nos. 2, 3.

On December 1, 2025, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and, after conducting an initial review of plaintiff's "story letter," advised by Report & Recommendation ("R&R") that this document be dismissed with leave to amend. Dkt. No. 4. As Judge Dancks explained, plaintiff's "story letter" was replete with legal conclusions and bereft of any non-conclusory factual allegations. *Id*. However, in light of plaintiff's *pro se* status, the R&R advised that plaintiff should be given a chance to file an amended pleading that conforms with the R&R's instructions and the applicable Federal Rules of Civil Procedure. *Id*.

Plaintiff has not lodged objections to the R&R, and the time period in which to do so has expired. *See* Dkt. No. 4. Notably, however, a recent mailing to plaintiff's address on file with the Court—at the Washington County Jail—has been returned as undeliverable, marked with a handwritten annotation that says "not here." Dkt. No. 6. Although it is unclear if this Order will reach plaintiff, he is cautioned that it is his responsibility to promptly update his mailing address on file with the Court, N.D.N.Y. Local Rule 10.1(c)(2), and that his failure to do so will result in the dismissal of this action.

Upon review for clear error, the R&R is accepted and will be adopted. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 4) is ACCEPTED; and

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED with leave to amend;

2026 WL 86741

3. Plaintiff shall have THIRTY DAYS from the date of this decision in which to submit an amended complaint for review;

4. If plaintiff timely files an amended complaint, this action will be REFERRED to Judge Dancks for further review and action as appropriate; and

5. If plaintiff does not timely file an amended complaint, this action will be DISMISSED without further Order of the Court.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 86741

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2026 WL 177788
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shaquill BATTLE, Plaintiff,

v.

NURSE BIOREFRENCE, et al., Defendants.

9:25-CV-1534 (BKS/PJE)

|

Signed 01/22/2026

**Attorneys and Law Firms**

SHAQUILL BATTLE, Plaintiff, pro se, 15-B-2077, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, NY 13642

**DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Shaquill Battle ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOOCS"). Dkt. No. 1 ("Compl."). Plaintiff, who is presently confined at Gouverneur Correctional Facility ("Gouverneur C.F."), has not paid the statutory filing fee and seeks leave to proceed in forma pauperis ("IFP"). Dkt. No. 6 ("IFP Application").

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) *and Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[1]     Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Dkt. No. 3. Plaintiff's IFP Application (Dkt. No. 6) is granted.

**III. DISCUSSION**

2026 WL 177788

## A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## B. Summary of the Complaint

The complaint alleges wrongdoing that occurred at Clinton Correctional Facility ("Clinton C.F.") and Gouverneur C.F. *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

### 1. Clinton C.F.

On or about December 30, 2024, plaintiff was called to the medical department for a "TB test." Compl. at 6, 10. Plaintiff objected and "unequivocally relayed" that he took a test in November 2024. *Id*. at 6. Defendant Nurse Biorefrence ("Biorefrence") injected "hot fluid" into plaintiff's arm that "made [him] jump." *Id*. at 6, 10. Due to the injection, plaintiff suffered from headaches, sleep loss, a "permanent twitch," and loss of range of motion. *Id*. at 6. Plaintiff filed a complaint with defendant Deputy Superintendent of Health Harrigan ("Harrigan") and "corresponded at least 9 letters." *Id*. at 7.

2026 WL 177788

While confined at Clinton C.F., plaintiff was treated by defendants Nurse Kim ("Kim") and Doctor May ("May"). *See generally* Compl. Kim provided cough syrup and medication for chest pain. *Id.* at 7. When plaintiff complained about a migraine, Kim "laughed." *Id.* During a visit with May, the doctor conducted a "breathing test" using a stethoscope and noticed a mass on plaintiff's "lat [sic] or arm area." *Id.* At the time, plaintiff was "covered in puss-filled bumps" due to the "poison" administered by Biorefrence. Compl. at 10. May told him that the bumps may be an allergy. *Id.* at 7. However, when plaintiff asked May if he could show her the rest of his body, she refused. *Id.* During a second visit with May, on April 12, 2025, plaintiff was "spitting green phlegm" and presented with high blood pressure and more "bumps." *Id.* May said she would "write a script" but plaintiff did not receive any medication, including Tylenol. Compl. at 7.

**\*3** From February 2025 until March 2025, plaintiff was denied recreation. Compl. at 11, 15. From February 2025 until April 2025, due to an "illegal lockdown," plaintiff's meals were served on dirty trays without a dessert, drink, or vegetables. *Id.* Inmates received moldy meat, wet bread, spoiled fruit and milk, and hard rice that was cold and "broke [plaintiff's] teeth." *Id.* Plaintiff's trays were served through the "feed up slot" in his cell, which was covered with mucus and feces. Compl. at 13. Plaintiff refused "over 9 meals" and "nobody logged it" or provided plaintiff with Ensure. *Id.* at 12. Plaintiff suffered from diarrhea, stomach pain, headaches, and dry mouth. *Id.* Plaintiff was "starving" until he was able to receive commissary. *Id.* However, plaintiff's commissary credits were "robbed." Compl. at 12.

On March 12, 2025, plaintiff received a misbehavior report and was transferred to the Special Housing Unit for 158 days. Compl. at 10. Defendant Superintendent M.J. King ("King") and the Deputy Superintendent for Security ("DSS") were present in the SHU when plaintiff arrived and "heard his clear objections" to being housed in the unit. *Id.* When he arrived, plaintiff was strip searched by Sergeant Martin[2] and forced to face a wall, naked, for twenty minutes. *Id.* at 10. The windows were open and, as a result, his hands froze. *Id.*

[2] Martin is not identified as a defendant in the caption or list of parties.

While in the SHU, plaintiff did not receive the "minimum standards" which included "three sets of everything." Compl. at 9-10. Plaintiff was "stocked" with only the clothes on his body and did not have a pillow, headphones, books, a sweater, or footwear. *Id.* Plaintiff stood in his socks in piles of dirt, garbage, and feces. *Id.* at 10-11. The cell was covered in dirt and "snot and mucus." *Id.* Plaintiff complained to Minkler, who responded, "you ain't getting [expletive]." *Id.* at 10.

On March 15, 2025, defendant Correctional Officer Minkler ("Minkler") brought plaintiff a tray marked "hospital." Compl. at 11. Plaintiff refused the meal and Minkler laughed. *Id.* at 12.

On March 18, 2025, defendant Correctional Officer Friend ("Friend") escorted plaintiff to recreation. Compl. at 8. Plaintiff was directed to put his personal property into a bin. *Id.* At approximately 9:30 a.m., plaintiff spoke with an area sergeant and asked about retrieving his legal property "that was stored." *Id.* Defendant Officer Hitts ("Hitts") gave plaintiff "several envelopes that were torn or damaged." *Id.* at 9. Plaintiff's storage bags were "cut at the bottom" which resulted in items falling out. *Id.* Hitts destroyed his personal property and, as a result, plaintiff had to "forfeit a claim" in "the state." Compl. at 9.

Plaintiff "grieved" his issues involving medical treatment and his conditions of confinement, to defendants King and the DSS. Compl. at 7-8. Plaintiff sent mail and made telephone calls. *Id.* at 7-8. King referred his mail to "another person." *Id.* at 8. Plaintiff also contacted defendant Commissioner Daniel Martuscello, III ("Martuscello") by mail and telephone, but he did not respond. *Id.* at 7, 19. Instead, Martuscello asked defendant Carol D. Moores ("Moores") to respond. Compl. at 7. Moores told plaintiff to "relay this to [his] care provider." *Id.* Plaintiff also contacted the Office of Special Investigations ("OSI"). *Id.* Defendant OSI Investigator "came to see" plaintiff and told him he "would get me to medical." Compl. at 8.

**2. Gouverneur C.F.**

2026 WL 177788

On April 22, 2025, plaintiff was transferred to Gouverneur C.F. Compl. at 15. When plaintiff received his property from Clinton C.F., he noticed that paper, food, clothing, hygiene items, electronics, and photographs were missing. *Id*. at 16. Friend and Hitts failed to store plaintiff's property or intentionally sole items. *Id*.

 **\*4**  From April 25, 2025 until October 2025, defendants Correction Officers Constigan ("Constigan"), Glandeur ("Glandeur"), Carr ("Carr"), Showers ("Showers"), Milsap ("Milsap") and McDonald ("McDonald") served plaintiff with trays that were "marked with tape" and contained food and drink that was tampered, contaminated, or spoiled. Compl. at 16-25. Some of the trays contained blood, dead bugs or maggots. *Id.* When they served the trays, defendants used racial slurs and verbally harassed plaintiff. *Id.* As a result, plaintiff refused food. *Id*. Plaintiff vomited, "broke out" with bumps on his arms, suffered from chest pains, itching on his head and neck and shoulders, and "had to use the bathroom 3 times in 1 hour." Compl. at 16-25. On April 30, 2025, defendant Correction Officer McDonald ("McDonald") served a meal that was tampered with and said, "they say your [sic] an [expletive] in your last jail." *Id*.

On April 30, 2025, plaintiff complained about the food to defendant Sergeant Hull ("Hull"). Compl. at 20. Hull stated that he would supervise the meals, but he never followed through. *Id*. Defendants' "conduct" caused plaintiff to file a complaint in the wrong jurisdiction and interfered with plaintiff's complaint in the Western District of New York. *Id*. at 17.

On May 21, 2025, defendants Correctional Officer Lynch ("Lynch"), Milsap, Constigan, and Glandeur "ransacked" plaintiff's cell. Compl. at 18.

On September 3, 2025, the "executive team," including defendant Superintendent Rockwood ("Rockwood"), "walked around." Compl. at 23. Plaintiff yelled to Rockwood who responded that he "did not know anything." *Id.* Plaintiff wrote to Rockwood "over 10 times." *Id*. Plaintiff wrote to defendant Supervisor McCormick ("McCormick"), four times, and did not receive a response. *Id*. Plaintiff attempted to file grievances with defendant Ms. Hutchins ("Hutchins"), but she refused to accept the grievances. Compl. at 22-24. Hull made rounds every day from June through August and "never did anything to assist [plaintiff] in filing complaints." *Id*.

While confined at Gouverneur C.F., plaintiff submitted sick call requests complaining of chest and side pain, a "mass growing on his left side, black and red "itchy" bumps, and "green phlegm" and was treated by defendants Nurse Woods ("Woods"), Nurse Coffey #1 ("Coffey #1"), and Nurse Coffey #2 ("Coffey #2"). *See generally* Compl. and Dkt. No. 4. When plaintiff saw Woods, she ordered blood drawn for allergy testing. Compl. at 18. However, Woods refused to test for "infection or cancer" and said, "it is not serious." *Id.* Woods told plaintiff he had, "nothing to complain about" and refused to treat him for his chest/side pain, phlegm and rash that resulted from food issues. *Id*. at 20-21. Plaintiff told Coffey #1 that Tylenol did not alleviate his pain and she said, "if it doesn't work, it doesn't work" and walked away. Compl. at 21. Woods, Coffey #1, and defendant Nurse Coffey #2 ("Coffey #2") repeatedly ignored plaintiff's sick call requests related to pain, vomiting, and other medical issues associated with ingesting contaminated food and his refusal to eat. Compl. at 22-24. On one occasion, Coffey #2 came to plaintiff's cell, took his temperature, laughed, and did nothing else. *Id*.

While confined at Gouverneur C.F., plaintiff was not permitted to possess religious study materials or magazines and was not permitted to "receive Jehovah witness." Compl. at 25-26.

Construed liberally [3], the complaint contains the following: (1) claims related to plaintiff's First Amendment right to religious freedom; (2) Eighth Amendment conditions of confinement; (3) Eighth Amendment deliberate medical indifference claims; (4) Fourth Amendment claims related to illegal searches; (5) First Amendment access-to-court claims; (6) Fourteenth Amendment due process claims related to an unwanted injection and property; (7) constitutional claims related to the grievance process; and (8) state law claims. *See* Compl. at 27-31. Plaintiff seeks compensatory damages and injunctive relief. *Id*. at 27. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

2026 WL 177788

3    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. S*ee, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

### C. Analysis

**\*5** Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id*. (quoting *Iqbal*, 556 U.S. at 676).

### 1. Rule 10

The complaint contains allegations related to individuals who are not identified in the caption, or list of parties, as defendants. *See* Compl. 10, 13, 15, 16, 18, 20, 21, 23, 24. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at \*2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the amended complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser,* No. 06-CV-0575, 2007 WL 2375814, at \*1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at \*1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 2. Defendant C.O. Gallagher ("Gallagher")

Plaintiff identifies Gallagher as a defendant in the caption. However, this defendant is not referenced anywhere in the body of the complaint and the pleading lacks factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated plaintiff's constitutional rights. Thus, the complaint fails to state a cognizable claim against this defendant. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl,* No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### 3. First Amendment – Religious Freedom

 **\*6**  The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.' " *Kravitz v. Purcell*, 87 F.4th 111, 127-28 (2d Cir. 2023) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible ... if it is 'reasonably related to legitimate penological interests.' " *Id*. (quoting *Benjamin*, 905 F.2d at 574). "[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

Plaintiff claims that he was not allowed to possess religious study materials or magazines and was not permitted to "receive Jehovah witness." Compl. at 25-26. Initially, the Court notes that plaintiff has not identified his religious beliefs and the complaint lacks facts suggesting that his religious beliefs were "sincerely held." Moreover, plaintiff has not plead when, how, or for how long his right to practice his religion was infringed. Further, even assuming plaintiff identified his religious beliefs and plead facts suggesting that his right to practice was infringed, the complaint fails to suggest that any named defendant was personally involved in the constitutional violations. Thus, plaintiff's First Amendment religious claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Eighth Amendment Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976).

### a. Conditions of Confinement

While the United States Constitution " 'does not mandate comfortable prisons,' ... neither does it permit inhumane" treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "To demonstrate that the conditions of confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an

2026 WL 177788

objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Jolly*, 76 F.3d at 480 (citation omitted). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). The Constitution requires "that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).

**\*7** With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly,* 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

#### i. Clinton C.F.

Plaintiff claims his Eighth Amendment rights were violated because (1) he was denied recreation; (2) he endured unconstitutional conditions of confinement in his cells; and (3) he was served spoiled and contaminated food. *See* Compl. at 11-12, 15.

With respect to the claims related to recreation, plaintiff has failed to plead facts related to who denied plaintiff recreation and how often he was denied recreation and whether. Indeed, the complaint lacks any connection between any named defendant and plaintiff's ability to participate in recreation.

With respect to plaintiff's food, the complaint lacks facts related to who provided contaminated or tampered meals from February 2025 until April 2025. While plaintiff claims that Minkler brought him a tray "marked hospital" on one occasion, the complaint lacks facts suggesting that the food on the tray was contaminated, spoiled, or otherwise caused plaintiff to suffer from any injury.

With respect to plaintiff's SHU confinement, the complaint lacks facts suggesting that any named defendant was responsible for the conditions in the SHU. While plaintiff claims that "Minkler said you ain't getting [expletive]," in reference to the conditions of his cell, the complaint does not indicate when this exchange occurred, in what context, how often and when plaintiff complained to Minkler or any other information that would allow the Court to conclude that Minkler was responsible for plaintiff's conditions on any date.

For the reasons set forth herein, plaintiff's Eighth Amendment conditions-of-confinement claims related to Clinton C.F. are dismissed without prejudice.

#### ii. Gouverneur C.F.

At this juncture, the Court directs Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick to respond to plaintiff's Eighth Amendment condition-of-confinement claims. This is not a ruling on the merits and the Court expresses no opinion whether these claims can survive a properly filed motion to dismiss or for summary judgment.

### b. Deliberate Medical Indifference

The Eighth Amendment mandates that prison officials provide adequate medical care to inmates. *See Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011). "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration

2026 WL 177788

of deliberate indifference to a prisoner's serious medical needs." *Id*. (internal quotation marks omitted). A deliberate medical indifference claim has objective and subjective components. *Id*. "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). As to the subjective element, an official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety. *See Hill,* 657 F.3d at 122 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### i. Clinton C.F.

**\*8** Plaintiff alleges that May, Kim, King, DSS, Martuscello, Moores, and OSI were deliberately indifferent to his medical needs. *See* Compl. at 7-8. However, the allegations in the complaint belie the claim. To wit, plaintiff admits that he received medical care and attention from May and Kim and that he was prescribed cough syrup, medication, and underwent "breathing testing." As presently constituted, plaintiff's allegations amount to nothing more disagreement with defendants' course of treatment, which is insufficient to establish an Eighth Amendment violation. *See Washington v. Westchester Cty. Dep't of Corr.,* No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.").

Accordingly, plaintiff's Eighth Amendment deliberate medical indifference claims related to his medical treatment at Clinton C.F. are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### ii. Gouverneur C.F.

In light of the Court's obligation to liberally construe a pro se litigant's pleadings, defendants Woods, Coffey #1, and Coffey #2 will be required to respond to plaintiff's medical indifference claims related to his treatment at Gouverneur C.F. This is not a ruling on the merits and the Court expresses no opinion whether these claims can survive a properly filed motion to dismiss or for summary judgment.

### 5. Fourth Amendment

The Fourth Amendment prohibits the government from conducting unreasonable searches. All searches conducted within a prison must be reasonable. *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983) (citation omitted). Courts within the Circuit have upheld routine random strip searches, including body-cavity inspections, performed on prison inmates. *See Covino v. Patrissi,* 967 F.2d 73, 76-80 (2d Cir. 1992); *see also Hurley v. Ward*, 584 F.2d 609, 612 (2d Cir. 1978) (reversing portion of injunction prohibiting strip searches of prison inmates); *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-8314, 2011 WL 6057837, at *9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment."). Assessing the reasonableness of a strip search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v Wolfish*, 441 U.S. 520, 559 (1979).

An inmate bears the burden of showing that a search was unreasonable, *see Shabazz v. Pico*, 994 F.Supp. 460, 473 (S.D.N.Y. 1998), so, at the pleading stage, a plaintiff must "plead facts sufficient to give rise to a plausible inference" that the search he challenges was unreasonable under the aforementioned standards, *Simmons v. Cripps,* No. 12-CV-1061, 2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted by* 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

As the Court reads the complaint, plaintiff claims that he was stripped searched by Martin when he arrived in the SHU and that the search violated his Fourth Amendment rights. Compl. at 10. As discussed *supra,* the Court will not engage in an analysis of any claims against individuals who are not identified as defendants in the list of parties or caption. For that reason, the Fourth Amendment claim related to the strip search is dismissed without prejudice.

 **\*9**  Plaintiff also makes a summary statement regarding his cell being "ransacked" by Lynch, Milsap, Constigan, and Glandeur. *See* Compl. at 18. The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell ..." and thus the Fourth Amendment does not apply to cell searches); *Demaio v. Mann*, 877 F.Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (citations omitted).

Accordingly, plaintiff's Fourth Amendment claims are dismissed without prejudice pursuant to o 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [4]

[4]    To the extent that plaintiff intended to assert a Fourteenth Amendment claim related to property being confiscated or discarded during the search, those claims are dismissed for the reasons set forth, *infra*.

### 5. First Amendment – Access to Court

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

However, "[a] hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis,* 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury,* 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16.

Case 3:26-cv-00133-AMN-CBF Document 18 Filed 05/05/26 Page 70 of 87

"Finally, ... the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] ... to challenge the conditions of [his] confinement." *Id.* at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

 **\*10**  Here, plaintiff claims that Hitts destroyed his personal property and, as a result, plaintiff had to "forfeit a claim" in "the state." Compl. at 9. Plaintiff also claims that issues with his food caused plaintiff to file a complaint in the wrong jurisdiction and interfered with plaintiff's complaint in the Western District of New York. *Id.* at 17. These vague allegations do not support the conclusion that plaintiff suffered an "actual injury" as a result of defendants' actions. The complaint lacks facts suggesting that plaintiff was unable to comply with court orders or that he suffered any "actual injury" in any criminal or civil actions. Indeed, the complaint does not contain any facts or information related to the procedural posture of any pending actions. *See Taylor v. John Doe Auburn Med. ADM & Health Care Provide*r, No. 9:23-CV-0017 (TJM/ATB), 2023 WL 2806119, at \*4 (N.D.N.Y. Apr. 6, 2023), *on reconsideration in part sub nom.,* 2023 WL 3275781 (N.D.N.Y. May 5, 2023).

Because the complaint lacks any suggestion that plaintiff suffered an injury to a non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement, plaintiff's First Amendment claims are dismissed without prejudice. *See Lafferty v. Virts*, No. 23-CV-358, 2024 WL 4134254, at \*5 (W.D.N.Y. Sept. 10, 2024); *see also, e.g., Chalif v. Spitzer,* No. 05-CV-1355, 2008 WL 1848650, at \*11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"); *Joseph v. State, Dep't of Corrs.*, No. 92-CV-1566, 1994 WL 688303, at \*1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail").

### 6. Fourteenth Amendment Due Process

#### i. Unwanted Injection

The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). The Second Circuit has held, "[i]t is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." *Kulak v. City of New York*, 88 F.3d 63, 74 (2d Cir.1996) (quoting *Rivers v. Katz*, 67 N.Y.2d 485, 492 (1986)). Such a right may be set aside only in narrow circumstances, including those where the patient "presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct with the institution." *Kulak v. City of New York,* 88 F.3d 63, 74 (2d Cir. 1996).

At this juncture, the Court finds that the complaint contains allegations sufficient to state a Fourteenth Amendment claim against Biorefrence. *See Muhammad v. Rabinowitz*, No. 11 Civ. 2428, 2012 WL 1155098, at \*4 (S.D.N.Y. Apr. 6, 2012) (the plaintiff alleged sufficient facts including the facility where he was located, the individuals involved, and the time period to support a claim of involuntary administration of medication under the Due Process Clause of the Fourteenth Amendment). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

#### ii. Property

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer,* 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009)

(An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Shabazz v. Pico,* 994 F.Supp. 460, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that the defendants destroyed his property in violation of his due process rights).

**\*11** For the reasons set forth herein, plaintiff's claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 7. First Amendment Claims Related to the Grievance Process

Inmates do not have a constitutional right to state grievance programs. *See Shell v. Brzeniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").

Moreover, inmates do not have a due process right to an investigation requested through a grievance. *See DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at \*9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).

Accordingly, plaintiff's claims related to the processing and investigation into his grievances and complaints, are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. State Law Claim

Plaintiff mentions in wholly conclusory fashion that he asserts a claim for intentional infliction of emotional distress. This "claim" is totally devoid of corresponding factual information, and plaintiff does not indicate how these claims arose, or what defendant, if any, might be personally involved in these alleged violations. "[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotations and alterations omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Because of the complete lack of factual allegations pertaining to the state law claim, the claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

To the extent plaintiff seeks to advance a criminal murder charge against defendants, *see* Compl. at 28, such claims should be dismissed with prejudice because "[a]n individual plaintiff has no private right of action to enforce state criminal statutes." *Berger v. NYS Office for People with Developmental Disabilities*, 2016 WL 11265988, at \*6 (N.D.N.Y. Nov. 8, 2016), *report and*

*recommendation adopted,* 2017 WL 696686 (N.D.N.Y. Feb. 22, 2017) (citations omitted); *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4, n.7 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Only government prosecutors have the authority to bring criminal charges against someone. If plaintiff believes he has been the victim of a crime, he should contact the appropriate law enforcement official.[5] Accordingly, plaintiff lacks standing to request this relief. *See id.; see also Ross v. Reed,* No. 1:13-CV-143, 2013 WL 1326947, at *2 (S.D. Ohio Mar. 5, 2013) (holding that the plaintiff is not "permitted to utilize this civil lawsuit as a vehicle to initiate any federal or ... state criminal charges.") (citing, *inter alia, Leek v. Thomas*, No. 09–3036, 2009 WL 1298499, at *3 (D.Kan. May 8, 2009) (and cases cited therein) (dismissing on screening the portion of a civil rights complaint requesting the initiation of a criminal prosecution and for disciplinary action against defendants because those matters were "beyond the authority of this court and therefore are not proper requests for relief") *report and recommendation adopted,* 2013 WL 1314735 (S.D. Ohio Mar. 28, 2013). Therefore, this claim is dismissed with prejudice.

[5]      If plaintiff believes the crime is a violation of federal law, he should contact the United States Attorney's Office for the district in which the crime is alleged to have occurred. If plaintiff believes the crime is a violation of state law, he should contact the police or the District Attorney's Office for the county in which the crime is alleged to have occurred.

## IV. MOTION FOR PRELIMINARY INJUNCTION

**\*12** Plaintiff moves for an order directing Showers, McDonald, Lynch, Milsap, Constigan, Glandeur, and Carr to cease "poisoning [him]." Dkt. No. 4 at 1, 5. Plaintiff also seeks an order directing Woods, Coffey #1, and Coffey #2 to provide medical treatment "or investigate [the] cause for complaints," and prevent defendants from asking questions only [without] investigation" or directing defendants to "test [for] infection." *Id*. Plaintiff also seeks an order directing Hutchins to "stop depriving [him] of his right to complain or petition[.]" *Id*. at 5. Plaintiff also moves for an order directing Rockwood to release plaintiff from custody. *Id.*

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.,* 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore,* 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Levesque v. Clinton Count*y, No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

2026 WL 177788

As plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995). Plaintiff's motion is denied for the following reasons.

### A. Relief Related to "Poisoning"

The relief that plaintiff seeks, directing an official to stop poisoning him, is, in essence, a request that this official obey the law. "Obey the law" injunctions are vague, do not require a defendant to do anything more than that already imposed by law, subject the defendant to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement. As such, these injunctions are not favored. *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. New York State Division of Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F.Supp.2d 186, 189 (E.D.N.Y. 2008). According to the Second Circuit, " '[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.' " *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

### B. Relief Related to Medical Care

**\*13** "[R]equest[s] for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent." *Hall v. Annucci*, No. 19-CV-5521, 2021 WL 4392526, at *14 (S.D.N.Y. Sept. 24, 2021) (citing *inter alia Perkins v. Rock*, No. 12-CV-1269, 2013 WL 4781762, at *2 (N.D.N.Y. Sept. 5, 2013) (noting that a plaintiff's request for preliminary injunctive relief was appropriately denied where the plaintiff's allegations of harm were "purely speculative" and unsupported "by any evidence, such as exhibits, medical reports, affidavits from other inmates, or any other proof").

While plaintiff seeks an order directing defendants to provide medical attention, *see* Dkt. No. 1, at 1, the motion lacks any specific facts demonstrating the likelihood of future harm. Plaintiff has not provided any documentation, exhibits, or any other evidence to support his Eighth Amendment deliberate medical indifference claims. Plaintiff's concerns are "unsubstantiated" and "speculative" and cannot form the basis for injunctive relief. *Louis v. Morley*, No. 22-CV-10094., 2024 WL 4573677, at *3 (S.D.N.Y. Oct. 24, 2024) "[The court cannot simply order adequate medical care or constitutional conditions of confinement, because '[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.' " *Smith v. Halstead*, No. 7:24-CV-6855, 2024 WL 4389284, at *3 (S.D.N.Y. Oct. 3, 2024) (citation omitted). Moreover, plaintiff's allegations related to defendants' refusal to "test for cancer" amount to nothing more than a disagreement over the course of treatment, and cannot form the basis for a colorable § 1983 claim. *See Tolbert v. Koenigsmann*, No. 9:13-CV-1577 (LEK/DEP), 2016 WL 3349317, at *4 (N.D.N.Y. June 15, 2016) (denying request for preliminary injunctive relief based upon the plaintiff's "issues" with the defendants' medical judgment).

On this ground, plaintiff's request is denied, without prejudice. *See Hall*, 2021 WL 4392526, at *14 (noting that if the plaintiff wishes to renew his request for injunctive relief, he should provide the Court with medical records, affidavits, or other documentary evidence in support of his theory that the defendants' actions presented a risk of irreparable harm).

### C. Relief Against Hutchins

First, as noted *supra*, the remaining defendants are Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick; and (2) Eighth Amendment deliberate medical indifference claims against Woods, Coffey #1, and Coffey #2. To the extent that plaintiff seeks injunctive relief against Hutchins, or any party not named as a defendant, that request is denied. A request for injunctive relief against non-parties is available only under very limited circumstances, none of which are clearly present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988*); see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Second, with regard to plaintiff's request for an order affording him the "right to complain or petition," *see* Dkt. No. 4 at 5, these events bear no relationship to the underlying claims that remain in this action. *See Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.") (internal quotation marks and citations omitted); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying plaintiff's request for preliminary injunctive relief because "the facts underlying the request for injunctive relief [were] essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context"); *McClenton v. Menifee*, No. 05-CV-2844, 2006 WL 2474872, at *17 (S.D.N.Y. Aug. 22, 2006) (denying motion for preliminary injunction where the underlying claim "[was] not included in the complaint and there [was] no showing that the plaintiff [had] exhausted his administrative remedies with respect to [that] claim").

### D. Release from Custody

**\*14** "Release from custody only may be obtained by a writ of habeas corpus." *Anderson v. Connecticut Superior Ct.*, No. 3:01 CV 2214, 2003 WL 203152, at *3 (D. Conn. Jan. 26, 2003) (holding that "[a] state prisoner may not bring a civil rights action in federal court under [section] 1983 to challenge either the validity of his conviction or the fact or duration of his confinement."). Accordingly, this portion of plaintiff's motion is denied.

## V. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 6) is **GRANTED**.[6] The Clerk shall provide the superintendent of the prison facility in which plaintiff is currently confined with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee $350.00 pursuant to 28 U.S.C. § 1915;[7] and it is further

[6]     Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7]     While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris*, 607 F.3d at 21).

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's claims the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted: (1) claims against Gallagher; (2) First Amendment claims related to religious freedom; (2) Eighth Amendment claims related to plaintiff's conditions of confinement at Clinton C.F.; (3) Eighth Amendment deliberate medical indifference claims related to plaintiff's treatment at Clinton C.F.; (4) Fourth Amendment claims; (5) Fourteenth Amendment property claims; (6) First Amendment access-to-court claims; (7) claims related to the grievance process; and (8) state law claims [8]; and it is further

8    Should plaintiff seek to pursue a claim dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**ORDERED** that the following claims survive review and require a response: (1) Eighth Amendment condition-of-confinement claims against Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick; (2) Eighth Amendment deliberate medical indifference claims against Woods, Coffey #1, and Coffey #2; and (3) Fourteenth Amendment claims against Biorefrence and Harrigan; and it is further

 **\*15**  **ORDERED** that the Clerk of the Court shall terminate the following defendants from the Docket Report: Kim, King, Security Superintendent Deputy, Moores, Martuscello, Friend, Hitts, May, OSI, Minkler, Lynch, Hutchins, and Gallagher; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with a copy of the complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summons and complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants or counsel, shall file a response to the complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action;** and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is **DENIED** without prejudice to renew; and it is further

**All Citations**

Slip Copy, 2026 WL 177788

---

*End of Document*

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4610675

2018 WL 4610675
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,
v.
Lisa M. GIACONA, Defendant.

5:18-cv-0002 (GTS/TWD)
|
Signed 04/02/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, Plaintiff, pro se, 13-B-3372, Cayuga Correctional Facility, Moravia, NY 13118.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for initial review the *pro se* complaint in this 42 U.S.C. § 1983 civil rights action brought by Terrance Brown Hines ("Plaintiff") against court reporter Lisa M. Giacona ("Defendant"). (Dkt. No. 1.) Plaintiff, who has not paid the filing fee for this action, has filed an application for leave to proceed *in forma pauperis* ("IFP Application") (Dkt. No. 6), along with the required Inmate Authorization Form. (Dkt. No. 7.) Also before the Court is Plaintiff's motion for appointment of counsel. (Dkt. No. 9.)

**I. IFP APPLICATION**
A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application (Dkt. No. 6), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP Application is granted.

**II. INITIAL SCREENING**
Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

Case 3:26-cv-00133-AMN-CBF   Document 18   Filed 05/05/26   Page 77 of 87

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 4610675

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

**\*2**  To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.*

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. COMPLAINT

Plaintiff is an inmate in custody of the New York State Department of Corrections and Community Supervision and is housed at Cayuga Correctional Facility. (Dkt. No. 1 at 2.[1]) On November 7, 2014, after a bench trial in Cayuga County Supreme Court, Plaintiff was sentenced to a prison term of ten years for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. *Id.* at 5; *see also* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited Mar. 30, 2018).

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

On January 15, 2015, Plaintiff received a copy of the trial transcript, which was signed and certified as being true and accurate by Defendant. (Dkt. No. 1 at 5.) Plaintiff noticed, however, that "certain testimony given at trial was clearly changed and ... omitted from the record." *Id.* (unaltered text). Generally, Plaintiff claims Defendant deliberately changed the record to secure Plaintiff's conviction and to deny him "a fair appeal process." *Id.* at 7-6. Despite various attempts to correct the trial transcript, *see id.* at 5-7, 10, 12-13, Plaintiff's conviction was affirmed by the Appellate Division on October 9, 2015. *Id.* at 6. Plaintiff's earliest release date is June 24, 2021. *See* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited March 30, 2018).

According to Plaintiff, "if not for the willful and deliberate actions of Defendant, [he] would not have lost life and liberty guaranteed under[ ] the United States Constitution." *Id.* at 8. Plaintiff alleges (1) violation of the Eighth Amendment; (2) violation of the Fourteenth Amendment; and (3) denial of equal protection of civil rights. *Id.* at 16. Plaintiff seeks compensatory damages of $10,000,000. *Id.* Plaintiff also requests that Defendant forfeit her court reporting license and that she be subjected to an unspecified term of imprisonment. *Id.* For a complete statement, reference is made to the complaint.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4610675

## IV. DISCUSSION

**\*3** A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for harm caused by other actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original).

Here, Plaintiff's § 1983 claims fall squarely within the ambit of *Heck* because a decision in his favor would necessarily call into question the validity of his conviction. Therefore, Plaintiff's § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated. *See Ingram v. Herrick*, 475 F. App'x 793, 794 (2d Cir. 2012) (a habeas corpus petition, not a § 1983 action, is the proper vehicle by which to seek relief from illegal confinement). This has yet to happen. *See* Decision & Order, *Hines v. Stallone*, No. 9:16-cv-1078 (TJM) (N.D.N.Y. Feb. 1, 2017), ECF. No. 11. Therefore, Plaintiff's § 1983 claims are not cognizable at this time. "Disposition of the case on *Heck* grounds, however, warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487) (other citations omitted).

Accordingly, the Court recommends dismissing this action in its entirety without prejudice as barred under *Heck*.

## V. MOTION FOR APPOINTMENT OF COUNSEL

In light of the above recommendation, Plaintiff's motion for appointment of counsel (Dkt. No. 9) is denied as moot.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 6) is **GRANTED FOR PURPOSES OF FILING ONLY**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 9) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff.

2018 WL 4610675

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [2] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

2        If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4610675

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3046513

Case 3:26-cv-00133-AMN-CBF Document 18 Filed 05/05/26 Page 80 of 87

2018 WL 3046513
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,

v.

Lisa M. GIACONA, Official Court Reporter, Defendant.

5:18-CV-0002 (GTS/TWD)
|
Signed 06/20/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, 13-B-3372, Cayuga Correctional Facility, P.O. Box 1186, Moravia, New York 13118, pro se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Terrance Brown Hines ("Plaintiff") against Official Court Reporter Lisa M. Giacona ("Defendant") asserting claims under the Eighth Amendment, Fourteenth Amendment Due Process Clause and Fourteenth Amendment Equal Protection Clause pursuant to 42 U.S.C. § 1983 arising from her alleged intentional falsification of his trial transcript, are United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed in its entirety without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Plaintiff's Objection thereto. (Dkt. Nos. 10, 11.) For the reasons set forth below, the Report-Recommendation is adopted and accepted.

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Dancks' Report-Recommendation**
Generally, in her Report-Recommendation, Magistrate Judge Dancks determined that Plaintiff's Complaint should be *sua sponte* dismissed in its entirety without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Plaintiff's claims (the success of which would necessarily call into question the validity of his conviction for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree) are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 10, at Part IV.)

**B. Plaintiff's Objection to the Report-Recommendation**
Generally, liberally construed, Plaintiff's Objection asserts two arguments: (1) his claims should not be dismissed because he is not challenging his underlying conviction but only seeking redress for Defendant's unconstitutional acts, which distinguishes his case from *Heck*; and (2) in the alternative, his claims should not be dismissed because the dismissal of the claims would permit Defendant to continue to tamper with court records and violate the constitutional rights of other individuals. (*See generally* Dkt. No. 11.)

**II. STANDARD OF REVIEW**

Case 3:26-cv-00133-AMN-CBF    Document 18    Filed 05/05/26    Page 81 of 87

Hines v. Giacona, Not Reported in Fed. Supp. (2018)
2018 WL 3046513

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]   *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]   *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*2**   When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

[3]   *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept.

2018 WL 3046513

20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4      *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. (Dkt. No. 10.) Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiff's Complaint is dismissed in its entirety, without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). To those reasons, the Court adds only two points.

First, the Court rejects Plaintiff's first argument in his Objection because he ignores the fact that, in order to prevail on any of the constitutional claims asserted, he would have to show that the allegedly incorrect change(s) intentionally made by Defendant to the trial transcript caused him harm, i.e., they negatively affected the outcome of his criminal prosecution and/or his appeal therefrom.[5] As a result, regardless of whether Plaintiff is seeking to change his trial transcript to lay the foundation for a successful appeal from his conviction or whether he is simply seeking $10,000,000 (and the forfeiture of Defendant's license),[6] his success in this action would necessarily call into question the validity of his conviction.

5      *See, e.g., Burrell v. Swartz*, 558 F. Supp. 91, 92 (S.D.N.Y. 1983) ("No constitutional ... right exists to an absolutely accurate trial transcript.... Plaintiff could state a claim on which relief may be granted insofar as the alleged errors and omissions in his transcript prejudice an appeal of his conviction.... [I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal.").

6      (*See* Dkt. No. 1, at Part VI [setting forth Plaintiff's requested relief].)

**\*3** Second, the Court rejects Plaintiff's second argument in his Objection because he lacks standing to assert claims on behalf of other people (and the possibility of those claims by others do not constitute an exception to the application of *Heck* to Plaintiff).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that, pursuant to Magistrate Judge Dancks' granting of Plaintiff's *in forma pauperis* application (Dkt. No. 6), the Clerk shall provide the superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization (Dkt. No. 7), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350.00 in installments, over time pursuant to 28 U.S.C. § 1915; and it is further

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 3046513

**ORDERED** that the Clerk shall provide a copy of Plaintiff's Inmate Authorization (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua spone* **DISMISSED in its entirety without prejudice** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3046513

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 967059

2012 WL 967059
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barton DePAUL, Plaintiff,

v.

James HELMER, Defendant.

No. 6:10–CV–00813 (LEK–ATB).
|
March 21, 2012.

**Attorneys and Law Firms**

Barton Depaul, Beacon, NY, pro se.

David H. Walsh, IV, Barth, Sullivan Law Firm, Syracuse, NY, for Defendant.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

 **\*1**  Plaintiff Barton DePaul ("Plaintiff" or "DePaul"), proceeding *pro se* and *in forma pauperis,* commenced this § 1983 civil rights action by filing a Complaint on July 6, 2010. Dkt. No. 1 ("Complaint"). Plaintiff then filed an Amended Complaint on July 28, 2010. Dkt. No. 8 ("Amended Complaint"). Defendant James Helmer, an investigator with the Oneida County District Attorney's Office ("Defendant" or "Investigator Helmer") filed an Answer to the Complaint on August 9, 2010. Dkt. No. 12 ("Answer"). On April 6, 2011, United States Magistrate Judge Andrew T. Baxter ordered Defendant to file an answer or otherwise respond to Plaintiff's Amended Complaint by April 30, 2011. Dkt. No. 31. Presently before the Court is Defendant's Motion to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b) (6). [1] Dkt. No. 35–1 ("Motion"). Plaintiff filed a Response in opposition to Defendant's Motion, and Defendant filed a Reply. Dkt. Nos. 42 ("Response"), 43 ("Reply").

[1]     The Court notes that Plaintiff's Amended Complaint was filed before Defendant filed his Answer to Plaintiff's initial Complaint, and well before Defendant filed the present Motion. Absent leave of the Court, Defendant's Motion would have been well beyond the time limits for responsive pleadings prescribed by Fed.R.Civ.P. 12(a). However, this time limit may be extended by Court order, *see* Fed.R.Civ.P. 6(b), and Magistrate Judge Baxter directed Defendant to respond by Order filed April 6, 2011. Dkt. No. 31. In any event, because Plaintiff is proceeding *in forma pauperis,* 28 U.S .C. § 1915(e)(2)(B) directs the Court to "dismiss the case at any time if the court determines that the action ... fails to state a claim on which relief may be granted."

**II. BACKGROUND**

Plaintiff claims that on May 19, 2010, Investigator Helmer ordered his arrest "on charges of no merit." Am. Compl. at 4. Plaintiff alleges that he had been "helping [Investigator] Helmer on a cold murder case." *Id.* at 5. Plaintiff appears to claim that Helmer "falsely accused" Plaintiff of pulling a "B–B gun" on him, and "lied to get [him] indicted." Dkt. No. 8–1 ("Am.Compl.Ex.1") at 1. Plaintiff also alleges that his Fourteenth Amendment rights were violated by Investigator Helmer "because he lied on court minutes trying to bury me in prison." Am. Compl. at 5. Plaintiff also alleges that Investigator Helmer released information about

Plaintiff's cooperation with the District Attorney's Office to the media, thereby "label[ing him] as a rat informant ... and now fighting to get [him] killed." *Id.* Plaintiff alleges that this led to a fight with another inmate, resulting in injuries to Plaintiff. *Id.*

Plaintiff submitted the Oneida County grand jury indictment that arose out of the "B–B gun" incident, in which Plaintiff was charged with third degree criminal possession of a weapon, second degree menacing, and second degree aggravated harassment. *Id.* at 7; Am. Compl. Ex. 1 at 5. The indictment states that Plaintiff "pointed what appeared to be a pistol or other firearm at Oneida County District Attorney's Chief Investigator James Helmer and stated, 'Give me all your money, you [expletive].' " Am. Compl. at 7. However, Plaintiff claims that he "was just bustin chops. After [eighteen] months of James Helmer doing it to me I thought I could do it to James." Am. Compl. Ex. 1 at 1.

The Court takes judicial notice of Plaintiff's conviction arising out of this arrest and indictment, as well as his continued incarceration at Fishkill Correctional Facility. [2] *See Wingate v. Gives,* No. 05 Civ. 1872, 2008 WL 5649089, at *3 n. 7 (S.D.N.Y. Apr.13, 2008) (taking judicial notice of conviction); *Williams v. City of New York,* No. 07 Civ. 3764, 2008 WL 3247813, at *2 (S.D.N.Y. Aug.7, 2008) (taking judicial notice of continued incarceration).

[2] This information was obtained on March 19, 2012 via the New York State Department of Corrections and Community Supervision Inmate Population Information Search page, located at http://nysdoccslookup.doccs.ny.gov/.

## III. STANDARD OF REVIEW

**\*2** In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1249. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Finally, the Court is mindful of the principle that a *pro se* litigant's papers are to be construed liberally. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citations omitted). Accordingly, the Court must interpret Plaintiff's submissions to "raise the strongest arguments that they suggest." *Dias v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (internal quotation and citation omitted). At the same time, the Court is "not obliged to reconcile [a *pro se]* plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Koulkina v. City of New York,* 559 F.Supp.2d 300, 314 (S.D.N.Y.2008) (quotation and citations omitted). Where such a contradiction exists, the *pro se* plaintiff's allegations "are insufficient to defeat a motion to dismiss." *Id.*

## IV. DISCUSSION

Reading Plaintiff's Amended Complaint liberally, Plaintiff appears to assert § 1983 causes of action for: (1) false arrest; (2) denial of the right to a fair trial; and (3) conspiracy. The Court addresses each of these claims in turn.

### A. False Arrest

Plaintiff claims that Defendant ordered his arrest "on charges of no merit." Am. Compl. at 4. "To state a claim under § 1983 for false arrest, the plaintiff must show a violation of his Fourth Amendment right to remain free from unreasonable seizures,

2012 WL 967059

'which includes the right to remain free from arrest absent probable cause.' " *Barmapov v. Barry,* No. 09–CV–3390, 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006)). "The existence of probable cause to arrest ... 'is a complete defense to an action for false arrest.' " *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *see also Cameron v. Wise,* No. 09 Civ. 967, 2011 WL 1496341, at *5 (S.D.N.Y. Apr. 20, 2011). "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986). Because Plaintiff was subsequently convicted, there was probable cause for his arrest and his claim for false arrest is insufficient as a matter of law.

### B. Right to a Fair Trial

**\*3** Plaintiff's claim that Defendant lied in court to secure his conviction—thereby violating his Fourteenth Amendment right to a fair trial—is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "if a judgment in favor of the plaintiff [in a § 1983 suit] would necessarily imply the invalidity of his conviction or sentence[,] the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Here, Plaintiff's claim that Defendant's testimony was perjured would clearly implicate the validity of his conviction. *See, e.g., Perez v. Cuomo,* No. 09–CV–1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.") (citations and quotations omitted). As Plaintiff has not demonstrated that his conviction has already been invalidated, and as the Court's inquiry confirms that he is still incarcerated on these charges, Plaintiff's fair trial claim is dismissed pursuant to *Heck.* [3]

[3]   Such dismissal is without prejudice, as "the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) (citing *Heck,* 512 U.S. at 487).

### C. Conspiracy

Plaintiff alleges that Investigator Helmer disclosed to the media that Plaintiff was acting as an informant for the District Attorney's Office, and that Plaintiff was attacked by another inmate as a result. Reading the Amended Complaint liberally, Plaintiff appears to assert that Investigator Helmer conspired with a private actor to cause him harm. To state a claim of conspiracy pursuant to § 1983, a plaintiff must sufficiently allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that and causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Here, Plaintiff fails to state a plausible claim for relief. Beyond mere conclusory statements, he pleads no facts that support even an inference that Defendant was working in concert to cause harm to Plaintiff. [4] Accordingly, this claim is dismissed for failure to state a claim upon which relief may be granted.

[4]   The Court notes that Plaintiff brought a similar claim against a different defendant in another civil action in this District. *See DePaul v. McNamara,* No. 6:10–CV–1123, Dkt. No. 1 (N.D.N.Y. filed Sept. 20, 2010). There, he claimed that District Attorney Scott McNamara had conspired with Investigator Helmer "for Plaintiff's murder by wrongfully disclosing that Plaintiff 'worked for' the District Attorney's Office apparently as an informant." *Id.,* Dkt. No. 7 (report-recommendation). This claim was found to be implausible, and dismissed for failure to state a claim upon which relief may be granted. *Id.,* Dkt. No. 8 (adopting report-recommendation).

The Court notes that a *pro se* action should generally not be dismissed without "granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugo,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. *Id.* Further, leave may be denied where a plaintiff has already amended his or her complaint once. *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119,

2012 WL 967059

at \*2 (E.D.N.Y. Oct.24, 2002). Here, Plaintiff has already submitted one Amended Complaint, and the flaws in that Amended Complaint are substantive in nature such that better pleading would not cure them. As a result, it would be futile to afford Plaintiff an additional opportunity to amend his pleading.

## V. CONCLUSION

**\*4** Accordingly, it is hereby:

**ORDERED,** that Defendant's Motion (Dkt. No. 35) to dismiss Plaintiff's Amended Complaint is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Amended Complaint (Dkt. No. 8) is **DISMISSED** without prejudice; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 967059

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---